### MILLER *v.* BATH ELEVATOR COMPANY.

1. WORKMEN'S COMPENSATION—DEATH—REMEDY.
   Workmen's compensation is in no respects a damage remedy, and the right thereto does not die with the injured person.

2. SAME—ILLEGALLY EMPLOYED MINOR—SUFFOCATION—DOUBLE COMPENSATION—DEPENDENT PARENTS.
   Dependent parents of an illegally employed minor 17 years of age, who was suffocated during the course of his employment, are entitled to double compensation, where there was an absence of fraudulent use of permits or certificates of age (CLS 1956, § 411.7).

3. SAME—FINDINGS OF APPEAL BOARD—EVIDENCE—PARENTS—DEPENDENTS.
   The finding of fact of the workmen's compensation appeal board that plaintiffs, parents of 17-year-old minor who was employed at defendant grain elevator without a work permit and was suffocated in the course of employment, were partially dependent upon their deceased son and that he had contributed 75% of his annual income to them *held*, sustained by competent evidence (CLS 1956, § 411.7).

DETHMERS, C.J., and CARR and KELLY, JJ., dissenting.

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 58 Am Jur, Workmen's Compensation § 577 *et seq.*
[2] 58 Am Jur, Workmen's Compensation §§ 152, 305.
[3] 58 Am Jur, Workmen's Compensation § 180.

Appeal from Workmen's Compensation Appeal Board. Submitted April 10, 1959. (Docket No. 42, Calendar No. 48,071.) Decided July 13, 1959.

Henry Miller and Josephine Miller presented their claim, as dependent parents of Robert Miller, deceased, against Bath Elevator Company, employer, and Globe Indemnity Company, insurer, arising from death of illegally employed minor. Double compensation denied in award to plaintiffs. Plaintiffs appeal. Defendants cross-appeal. Reversed.

*Marcus, Kelman, Loria, McCroskey & Finucan* and *McArthur & Sullivan* (*Benjamin Marcus* and *Robert Libner,* of counsel), for plaintiffs.

*Carl L. Reagh,* for defendants.

KELLY, J. (*dissenting*). Plaintiffs and appellants are the father and mother of deceased Robert Miller. Deceased, under 17 years of age, was employed by defendant Bath Elevator Company, without a working permit or the necessary job approval from the department of labor. Deceased's body was found in a wheat bin at the elevator. His death was determined to be due to suffocation, while in the course of his employment. The workmen's compensation appeal board approved the referee's finding that as partial dependents, appellants were not entitled to double compensation benefits.

Appellees filed a cross appeal, claiming the appeal board erred in approving the hearing referee's award granting compensation to appellants "at the rate of $26.63 per week as partial dependents of Robert Miller, deceased, from July 25, 1955, until further order of the department but not to exceed 450 weeks from the date of death of said employee

together with reimbursement in the amount of $5.00 for funeral expenses."

Section 7, part 1, of the workmen's compensation act, being CLS 1956, § 411.7 (Stat Ann 1957 Cum Supp § 17.147) provides, in part, as follows: "Provided, That any minor under 18 years of age whose employment at the time of injury shall be shown to be illegal shall, in the absence of fraudulent use of permits or certificates of age, in which case only single compensation shall be paid, receive compensation double that provided elsewhere in this act."

Section 7 was construed in *Gordon* v. *Smith Brothers,* 284 Mich 456, and if we follow this decision we will affirm the appeal board's denial of double compensation to appellants herein.

Appellants ask this Court to override the *Gordon* decision, advancing 2 reasons: (1) "The *Gordon* case has been impliedly overruled by this Court;" and (2) "The *Gordon* decision was based upon erroneous construction of the workmen's compensation act, particularly that the workmen's compensation act must be strictly construed."

To sustain the conclusion that we have impliedly overruled *Gordon,* appellants quote the following from *Stuart* v. *Spencer Coal Co.,* 307 Mich 685, 688:

"We need not speculate on whether the legislature intended by this provision to penalize the employment of minors, as claimed by appellant, or whether the legislature had in mind a greater need for compensation by a minor under 18 years of age because of lesser earning capacity, a longer life period of a crippling condition, or for some other reason. The statute plainly refers to the payment as *compensation* and we see no impelling reason for calling it otherwise."

The *Stuart Case, supra,* involved a double compensation award to a minor for an injury to his hand.

The employer's insurer endeavored to escape double compensation. This decision did not involve the question before us on this appeal and did not constitute an implied overruling of the *Gordon Case.*

Asserting that the *Gordon* decision was a strict construction of the statute, appellants claim that recent decisions of this Court disclose that a majority have abandoned this rule of construction and, in support of such declaration, quote Justice SMITH in *Sheppard* v. *Michigan National Bank,* 348 Mich 577, 589, as follows:

"In this connection we reject, without qualification, the asserted 'general rule of interpretation' quoted to us this date, to the effect that 'the workmen's compensation law, being in derogation of the common law, must be strictly construed.' "

A fair and reasonable construction of the controlling legislative enactment, rather than a strict or liberal construction, sustains and indorses the reasoning and conclusions of the *Gordon Case.*

In this appeal we are asked to construe a short paragraph of clear and unambiguous language dealing with a definite, small group of employees. The fact that the legislature intended that this section of the statute be separate and apart from other sections is evidenced by the legislative words, "receive compensation double that provided elsewhere in this act."

The legislature provided "that any minor under 18 years of age whose employment at the time of injury shall be shown to be illegal shall * * * receive compensation double that provided elsewhere" in the act. The double compensation is provided for the minor. There is no such provision for the parents of the minor.

That appellants' reasoning revolves around the concept that the section in question was enacted as

a punitive measure, rather than a measure of compensation, is disclosed by the following from their brief:

"The public policy of this State should be and obviously is to discourage employers from allowing hazardous, illegal employment in the case of minors who die, as well as in the case of those who survive and are disabled. It is equally consonant with the legislature intent to call for the payment of double compensation in cases where the illegal employment results in death. To hold otherwise is to say that while the legislature intended to deter the practice of hazardous employment of minors in cases of occupational injury and disability, they never contemplated that hazardous employment of minors might also result in death."

No provision in either the title of the compensation act or in the section applicable sustains the punitive theory.

The legislature protected minors and punished those who failed to do so by passing the Hittle juvenile employment act (PA 1947, No 157 [CL 1948, § 409.1 *et seq.;* Stat Ann 1950 Rev § 17.701 *et seq.*]), as is disclosed by the title, which reads:

"An act to provide for the legal employment and protection of minors under 18 years of age; to define legal employment; to prohibit the employment of minors under 18 years of age without work permit, except as otherwise provided in this act; to provide for the issuance and revocation of work permits and age certificates; to provide for the regulation of hours and conditions of employment of minors; and to provide for the enforcement of this act and prescribe penalties for the violation of this act."

It is not necessary to determine the legislature's motive because of the clear and unambiguous provisions of the enactment; but, if such an indulgence

were desirable, it would be more logical to conclude that this unusual provision of double compensation was provided realizing the unusual loss, both physical and mental, administered to a youth under 18 years, rather than to conclude that the act was intended to punish the employer and doubly compensate the parents, who, as in this case, acquiesced in the illegal employment and received a major part of the youth's weekly pay check.

We do not agree with appellants that this Court in the *Gordon* decision overlooked *City of Grand Rapids* v. *Crocker,* 219 Mich 178, and that if we follow the *Crocker* decision we would overrule *Gordon.* The *Crocker Case* involved the construction of section 15, part 3, of the workmen's compensation act, providing that where the injury was caused by some person other than the employer, the employee may proceed either at law against the third person for damages or against the employer for compensation, but not against both.* In determining whether the provisions relating to employee should apply to dependents, the Court reviewed the numerous sections of the act where the word "employee" was used, and concluded (p 188) "that the word 'employee' was intended to be used in these sections in a somewhat collective sense; that it was intended to embrace the dependents of the employee as well as the employee himself. Unless so interpreted, the act contains no provision for enforcing the rights of dependents in many particulars."

The present appeal differs from the *Crocker* decision. Here we are dealing with a provision of the act not applicable to the general classification of employees, but a definite group of employees, namely: Minors, less than 18 years of age, illegally

---

* This provision has since been repealed. See, currently, CLS 1956, § 413.15 (Stat Ann 1957 Cum Supp § 17.189).—Reporter.

employed; and does not deal with compensation, but deals with double compensation.

We are not overruling *Gordon* v. *Smith Brothers, supra.* We are affirming the appeal board's decision that appellants are not entitled to double compensation.

*Appellee's cross appeal:*

The referee's "finding that both the father and mother are partial dependents of the deceased and that he contributed 75% of his earnings to them," is commented upon in the appeal board's opinion on review, as follows:

"The defendant further contends that 'there was no testimony to support the referee's finding that the parents were dependents within the meaning of the act.' The plaintiff father operates a garage business and gasoline station. The plaintiff's only income was about $3,500. They had 4 children living at home including the deceased. The question is not whether or not they could have gotten by without the deceased's contribution but whether or not they did in fact rely upon these contributions for their support. We believe it obvious that they did. The conclusion necessarily follows from the fact that they had themselves and 4 children to support on only $3,500 a year. With that income the deceased's income must have been of vital importance and the record indicates that the deceased took the job with the defendant with the idea that his earnings there would help his parents more than could his working with his father in the garage and gasoline station.

"The defendant further contends that 'There was no testimony to support the referee's finding that the deceased contributed 75% of his income to the parents.' It elaborates this contention by stating that there was no proof of 'annual earnings.' The deceased worked for wages only for the defendant during the year prior to his death. The record

indicates his total earnings from the defendant during that year. If the record is in error the fault is with the defendant. It is based upon its records.

"The defendant also questions the referee's finding of a weekly wage of $53.25. The referee arrived at this figure by averaging the plaintiff's wages for his last 2-week pay period. This 2-weeks' pay was the smallest 2-weeks' pay that the deceased had during his last 6 weeks at work. The wages earned by the deceased prior to said 6-weeks' period were part-time earnings. If anyone could complain about the referee's finding of a weekly wage it would be the plaintiffs herein and they have not raised the question on appeal.

"The defendant also contends that the referee did not take into consideration the costs of the deceased's support when determining the amount of contributions. The testimony is clear and uncontradicted that the deceased worked in his father's garage and gasoline station about 30 hours a week while not working for the defendant and about 10 hours a week while working for the defendant. This work was without pay and easily overbalanced any consideration of the cost of his own support." ·

In *Kostamo* v. *H. G. Christman Co.*, 214 Mich 652, 658, 659, we stated:

"Upon the first 2 points urged, we are unable to agree with the contention of defendants. We do not think that the record is barren of any testimony from which a conclusion can be drawn that after decedent left home the mother was in any way dependent upon him. We think there was evidence that she was partially dependent upon him. That evidence we shall not weigh. Because decedent had not contributed anything for a period of 7 weeks it is urged that there was no dependency at the time of the accident. It should be borne in mind that he gave his mother $51 before leaving home. What inference should be drawn from this circumstance?

"In *Turner* v. *Miller & Richards,* 3 BWCC 305, a workman who had been a sailor had been accustomed to send money home to his parents. On taking up work on shore for his father he gave a certain amount to his mother each week. On going to sea as a sailor again he was drowned, not having at that time sent anything home. It was held that there was evidence to support a finding that the deceased had been a contributor for years, and would have continued as such had he lived, and that the family was therefore dependent upon him.

The evidence upon which the board may act need not be direct, but may be circumstantial. *Meyers* v. *Michigan Central R. Co.,* 199 Mich 134."

The finding of fact of the appeal board that plaintiffs were partially dependent upon their deceased son and that he contributed 75% of his annual income to appellants, is supported by competent evidence.

The award of the workmen's compensation appeal board should be affirmed. No costs, neither party having prevailed.

DETHMERS, C. J., and CARR, J., concurred with KELLY, J.

SMITH, J. Under the common law of earlier times it was often cheaper to kill a man than merely to maim him. "In a civil court," said Lord Ellenborough in *Baker* v. *Bolton,* 1 Camp 493 (170 Eng Rep 1033), "the death of a human being could not be complained of as an injury."

It was inevitable that a doctrine so monstrous, its origins so obscure and puzzling, should receive legislative amelioration and such has been the case.* Even with relation to workmen's compensation,

---

* The doctrine is examined in some detail in *Courtney* v. *Apple,* 345 Mich 223, dissenting opinion, 237.

which is in no respects a damage remedy, it is provided by statute that compensation for an industrial injury shall not be interred with the body. Yet, despite the express mandate of an enlightened public conscience, clearly stated in the compensation act itself, we are besought to read this provision out of the act by a process of judicial interpretation. We are invited to engraft this grotesque stalk of the common law, long discredited and unlamented, upon one of the great remedial acts of our times, thus infusing the ancient obscenity with new life and vigor. This we cannot do. The people have said otherwise.

They have provided in section 1 of part 2 of the workmen's compensation act[1] that compensation payable an injured employee shall "in case of his death * * * be paid to his dependents." To my way of thinking this settles the matter.

It was once argued, and successfully (See *Gordon v. Smith Brothers*, 284 Mich 456), that the double payment to be made to an illegally employed minor according to the act[2] is not "compensation" at all, and since only compensation goes to dependents, these payments need not be made to them. The jurisprudential theory thus invoked is the jurisprudence of the dictionary. But here it serves not even its advocates. For the act itself describes the payment as double "compensation."[3]

If there were any merit at any time to the argument that double compensation is not really double compensation at all, but single compensation plus penalty in equal amount, it has long since been dis-

---

[1] CLS 1956, § 412.1 (Stat Ann 1957 Cum Supp § 17.151).
[2] CLS 1956, § 411.7 (Stat Ann 1957 Cum Supp § 17.147).
[3] "Provided, That any minor under 18 years of age whose employment at the time of injury shall be shown to be illegal shall, in the absence of fraudulent use of permits or certificates of age, in which case only single compensation shall be paid, receive compensation double that provided elsewhere in this act."

posed of. We examined it, and we rejected it, in *Stuart* v. *Spencer Coal Co.,* 307 Mich 685, 688. "The statute," we held, "plainly refers to the payment as *compensation* [the emphasis is in the original] and we see no impelling reason for calling it otherwise." Nor do we. Compensation. (double in amount) is what the act authorizes and compensation (double in amount) is what is paid. (The words, in fact, of the statute are just that. It speaks of the payment to illegally employed minors as "compensation double that provided elsewhere in the act.") So far as *Gordon* v. *Smith Brothers, supra,* may be thought to have any authority after the *Stuart* decision it is explicitly overruled herewith.

The finding of the appeal board as to dependency was properly supported by competent evidence.

Reversed. Costs to appellants.

BLACK, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred with SMITH, J.